493 F.2d 904
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Morris HALL, Defendant-Appellant.
No. 73-3627 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir., 1970,
431 F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 May 9, 1974, Rehearing Denied June 20, 1974.
 
 J. V. Eskenazi, Federal Public Defender, Miami, Fla. (Court-appointed), Robert M. Moore, Asst. Public Defender, Miami, Fla., for defendant-appellant.
 Robert W. Rust, U.S. Atty., Lawrance B. Craig, III, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.
 Before WISDOM, GOLDBERG and GEE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Joseph Morris Hall was found guilty by a jury of violating Title 18, United States Code, 871, in that he knowingly and willfully made an oral threat to take the life of the President of the United States. Finding no error in his conviction, we affirm.
 
 
 2
 During the wee morning hours of August 2, 1973, a person telephoned the F.B.I. office in Miami, said that he was going to kill President Nixon, and then gave his name as Joseph Hall and his address as a trailer in Mango Trailer Park at Northwest 79th Street and 29th Court. Later that morning a Secret Service agent, notified by the F.B.I., went to the address given, knocked on the door of the trailer, identified himself to the man who answered, and asked if he was Joseph Morris Hall. The man responded that he was indeed. The agent then asked if he had contacted the F.B.I. in Miami early that morning, to which he responded that he had. Thereupon, Mr. Hall was placed under arrest and taken to the county jail, where he was for the first time given the warning required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He then waived his Miranda rights and admitted that he did in fact threaten the President's life on the phone that morning.
 
 
 3
 Appellant raises three points on appeal: (1) that he was in custody when he made his first admission that he had called the F.B.I. and that, therefore, this statement should have been suppressed under the Miranda rule; (2) that, since the first statement was in violation of Miranda, the second statement made at the jail after a proper warning should have been suppressed, even without an objection, as the fruit of the first statement; and (3) that the court should have instructed the jury that they had to find specific intent to carry out the threat on the President's life.
 
 
 4
 We evaluate appellant's first point in the manner stated in Brown v. Beto, 468 F.2d 1284, 1286 (5th Cir. 1972):
 
 
 5
 Before law enforcement officers can subject a citizen to custodial interrogation, he must first have been given the Miranda warnings. In Miranda 'custodial interrogation' was defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' This court has yet to formulate a general rule for distinguishing custodial from non-custodial interrogation but instead has preferred to take a case-by-case approach . . .. In making the distinction between custodial and non-custodial interrogation this court has singled out certain criteria as having special significance; these include probable cause to arrest, subjective intent of the police, subjective believe of the defendant, and focus of the investigation. Although none of these factors is alone determinative, we have recently indicated that the most compelling is whether or not the focus of the investigation has finally centered on the defendant.
 
 
 6
 Applying these criteria to the peculiar circumstances of this case, we conclude that Hall was not in custody when he made the first incriminating statement. Prior to this time the investigating agent had no basis on which to proceed other than his instructions that somebody had called in the threat and cooperatively given a name and address. He had not heard the telephone conversation and could not, therefore, link the voice on the phone with that of the man who answered the door and stated that he was Joseph Morris Hall. At this point it must have seemed as likely as not that someone was playing a bad practical joke on Mr. Hall. Not until he admitted that he had placed a call to the F.B.I. that morning did the investigation sufficiently focus on our appellant. Only thereafter was any interrogation ccustodial.' And this status was given substance by his immediate arrest, transport to jail, and advisement of Miranda rights.
 
 
 7
 After appellant had voluntarily waived his rights to counsel and to remain silent, he was asked the next question: did he threaten the life of the President. His affirmative response was properly heard as evidence. The admissibility of his pre-custodial statement precludes any argument that this custodial admission was 'tainted.'
 
 
 8
 Appellant's final point, that the trial judge erred in refusing to instruct the jury that specific intent to harm the President was a requisite element of the offense, is foreclosed by our recent decision to the contrary in United States v. Rogers, 488 F.2d 512 (5th Cir. 1974).
 
 
 9
 Affirmed.