Argued and submitted March 3, reversed March 24, 2004

Monic Rene MICHIELI,
*Respondent,*

*v.*

Richard Melvin MORGAN,
*Appellant.*

C031020CV; A121405

86 P3d 688

Aron D. Yarmo argued the cause for appellant. With him on the brief was Daniel M. Spencer, LLC.

No appearance for respondent.

Before Landau, Presiding Judge, and Armstrong, Judge, and Kantor, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Respondent appeals a stalking protective order, challenging the legal sufficiency of the evidence to support the issuance of the order. On *de novo* review, we reverse.[1]

Respondent and petitioner were both employed by a technology company in Bend. Respondent was petitioner's supervisor for approximately one year. Petitioner left the company. Shortly thereafter, respondent began to e-mail petitioner and suggest that the two begin a social relationship. It was, in petitioner's estimation, "harmless conversation." They apparently met socially on one occasion. Respondent was married at the time.

But soon respondent began expressing an interest in a more serious relationship. In June of 2002, he e-mailed petitioner and complained that he had progressed from "wanting" to see her to "needing" to see her. Petitioner did not reply. In the following two months, respondent sent petitioner a number of e-mails expressing his growing romantic interest in her and a desire to meet with her personally.

On August 20, 2002, petitioner and respondent went out to dinner together. Respondent gave petitioner a gift of some tickets to a theatrical production. Petitioner accepted the gift.

On September 3, 2002, petitioner replied to respondent's e-mails: "I think I'd be more comfortable with a 'Christmas Card' type relationship. Thank you for understanding." The same day, respondent replied that he did not understand why she would not speak with him. Petitioner e-mailed in return that she was becoming "afraid" of respondent. She complained that he was not the only problem in her life and that she was not avoiding him, but that she wanted his "obsessive behavior" to stop. She pleaded with respondent to stop contacting her. Respondent replied, "I hope you can accept that my actions over the past ten days were fueled by confusion—not obsession—and the fact that I do not deal

---

[1] Because this appeal was filed on May 7, 2003, the amendments to ORS 19.205 and ORS 19.415, Or Laws 2003, ch 576, §§ 85, 88, are inapplicable to this case. Or Laws 2003, ch 576, § 90a; ORS 171.022 (2003).

with silence well. I much prefer the clarity of your e-mail to the fear of the unknown."

Five days later, respondent e-mailed petitioner. He stated that he would love her for the rest of his life, but that he would not e-mail her again without her approval. Respondent was not true to his word, however. In the following three months, he sent respondent six additional e-mails, telephoned her 30 times, mailed her two Christmas cards with enclosed letters, and mailed her two packages. In each of the communications, respondent expressed his desire to meet with petitioner.

On December 6, 2002, respondent received an e-mail from McReynolds, a friend of petitioner's. McReynolds demanded that respondent stop harassing petitioner and threatened respondent with legal action if he ignored the warning. Respondent replied that he would have no further contact with petitioner. He expressed sadness and confusion as to her choice not to contact him and said that he feared that his actions "may have been miscalculated and certainly have been misconstrued."

The following week, respondent again e-mailed McReynolds but also copied petitioner. He complained that he had "in no way harassed" petitioner, that he was not a "stalker," and that any law enforcement involvement would be an "over-reaction."

On December 17, 2002, petitioner e-mailed respondent. She complained that respondent had repeatedly promised not to contact her and had repeatedly broken that promise. She warned him to stop harassing her and said that this was a last chance to comply with her request. She said that if she received any further contact from him she would seek a restraining order.

It appears that there were no contacts for three months. On March 24, 2003, however, respondent again e-mailed petitioner. He explained that, "I know I risk repercussion by contacting you—but sometimes in life you have to take a chance against the prevailing wisdom." There followed a five-page letter explaining that he had separated from his

wife and believed that he was prepared to go forward with a relationship with petitioner:

> "So it is, necessarily, one chance only. It is the bottom of the ninth inning, both the bases and the count are full, the guy behind me in the batting order hasn't had a base hit for a month, and we are down by three runs. Yeah, darling, I'm swingin' for the fence. Strike out trying or win this sucker on the last gasp. If you can't find it in yourself to make that leap of faith, then I won't be asking again."

Petitioner filed a petition for a stalking protective order. At the hearing, the evidence of the foregoing facts was received. In addition, petitioner testified that she was afraid of respondent. When the trial court questioned her, she replied that it was common knowledge that respondent has a "hot temper." The record contains no elaboration on that testimony. The trial court issued the requested order.

■ On appeal, respondent argues that the trial court erred in issuing the stalking protective order because the record does not contain evidence of the statutory prerequisites for the issuance of the order.

■ ORS 30.866(1) provides, in part, that a court may issue a stalking protective order against another person under the following circumstances:

> "(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

> "(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

> "(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

"Contact" includes, among other things, "making written communications of any kind." *Pinkham v. Brubaker*, 178 Or App 360, 369, 37 P3d 186 (2001).

■■ In *State v. Rangel*, 328 Or 294, 302-04, 977 P2d 379 (1999), the Supreme Court held that, if the contacts are

expressive in nature, Article I, section 8, of the Oregon Constitution requires that the person requesting the stalking protective order must establish three additional facts: (1) The contact communicates a threat that "instills in the addressee a fear of imminent and serious personal violence," (2) the threat is "unequivocal," and (3) the threat is "objectively likely to be followed by unlawful acts." *Id.* at 303 (citing *State v. Moyle*, 299 Or 691, 703-05, 705 P2d 740 (1985)). The court explained that the kinds of threatening contacts that may support the issuance of a stalking protective order do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *Moyle*, 299 Or at 705).

In this case, respondent's contacts are purely expressive. Thus, the additional proof requirements for expressive contacts announced in *Rangel* apply. Although there certainly is ample evidence of repeated and unwanted contact with petitioner that reasonably caused her alarm, the fact remains that there is a complete absence of evidence of an "unequivocal" threat that instilled in petitioner an objectively reasonable fear of imminent and serious personal violence. Petitioner testified that she was "afraid" because petitioner had a "hot temper," not that anything that he said communicated to her that she was in imminent danger. Finally, there is no evidence that any threat that may be implied from respondent's communications was likely to be followed by unlawful acts.

We conclude that the trial court erred in issuing the stalking protective order.

Reversed.