Argued and submitted March 10, affirmed June 25, 2008

Billie Jo CROP,
*Petitioner-Respondent,*

*v.*

Jeffery Brock CROP,
aka Jeffery Vincent Crop,
*Respondent-Appellant.*

Washington County Circuit Court
C064484CV; A134822

188 P3d 364

John J. Tyner III argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

EDMONDS, J.

## EDMONDS, P. J.

Jeffrey Crop, the respondent below,[1] seeks reversal of a stalking protective order (SPO) obtained by his estranged wife, the petitioner below, under ORS 163.735. On appeal, respondent asserts two assignments of error. We reject his first assignment without discussion because any elaboration regarding our reasoning would not benefit the bench or bar. In his second assignment, respondent argues that, as applied to him, the SPO impermissibly interferes with his freedom of expression in violation of Article I, section 8, of the Oregon Constitution.[2] On *de novo* review, *Hanzo v. De Parrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we affirm.

In October 2006, petitioner and respondent, who are parents of a child, were in the process of dissolving their marriage. At the time, the parties were not residing together. However, on October 17, respondent told petitioner that he did not want to proceed with the dissolution. According to petitioner, "[h]e called me sweetheart. I saw red and told him to get the hell off my front porch, he's not welcome there unless he's picking up his daughter." The following day, petitioner had sexual intercourse with her boyfriend in her residence. During that conduct, petitioner's boyfriend commented "how delightful the afternoon was." The next day, petitioner received two text messages from respondent. The first said, "You were a delight yesterday," and the second said, "Oops, I meant the day before." Petitioner testified that respondent's text messages caused her to become alarmed:

> "* * * [My boyfriend] was at my house, we were having sex, the window was open, and [my boyfriend] told me how delightful the afternoon was. The following day I received a text message from [respondent] telling me how delightful I am. That was alarming to me."

---

[1] In stalking cases, we refer to the parties by their status in the trial court. We therefore refer to Jeffrey Crop, the appellant before us, as respondent and to Billie Jo Crop, the respondent before us, as petitioner.

[2] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of that right."

She explained further, "He's outside of my apartment. Whether my daughter's home or not, he's out there."

On December 16, 2006, an anonymous caller telephoned the Forest Grove Police Department to report that the caller had observed petitioner through a window in her residence using methamphetamine. In response, Officer Hall was dispatched to petitioner's apartment to check on the daughter's welfare. Petitioner told Hall that her daughter was at a slumber party. As he was leaving petitioner's apartment complex, Hall saw respondent nearby. Respondent approached Hall, confirmed that he had made the report, and explained that "he had seen it from some railroad tracks that run just north of [petitioner's] apartment location." The railroad tracks are approximately 25 feet from petitioner's apartment. Hall then warned respondent that he could be subject to a stalking protective order and told him that "his best interest would probably be to just avoid the area."

Nonetheless, petitioner testified that, approximately half an hour after Hall left, she received a voice message from respondent that said, "Please call me no matter how late." Petitioner then received a text message from respondent, which stated, "At least I didn't have to take a time out." According to petitioner, the text message referred to a conversation she had with her boyfriend and her daughter the previous day. During the conversation with the boyfriend, petitioner became upset because respondent, while talking to their daughter on the phone, had continued to bring up legal issues with her. Petitioner described to the trial court what occurred:

"[PETITIONER]: I turned off my phone. I went in the house, I told [my daughter], 'I'm going to turn off the phone' and she says, 'Okay.' So I turned off the phone. I went upstairs to collect myself because of course this leaves me quite upset. I [came] back downstairs, and I told them, 'Sorry, I needed to take a time out.'

"That's what he put in the text message the next night.

"* * * * *

"That means that he was outside my apartment Friday night as well.

"[PETITIONER'S COUNSEL]: Okay. So you received the voicemail, and then you received this text message[.] * * * [H]ow is this making you feel?

"[PETITIONER]: He's crazy. He's gone over the deep edge. He attacks people who walk through the yard to get to the railroad tracks, am I next? Does it just take me going from my apartment to my car, and he's just going to flip out and kill me, too. I can't defend myself against him. What am I supposed to do? Am I supposed to lock myself in my apartment? Am I never supposed to leave it?"

Sometime later, the Forest Grove Police Department dispatched Officer Moser to petitioner's residence in response to a report that respondent had been driving by petitioner's residence. When Moser arrived at petitioner's residence, petitioner told Moser that respondent "had driven by her location on two occasions." Moser located respondent and issued a stalking complaint to him. While Moser was issuing the complaint, respondent denied that he had driven by petitioner's house but

"mentioned that he had come by her residence at a previous date, which was on the 16th of December, 2006, and that he had tried to talk to his daughter * * * and in the course of going by the residence he heard some strange noises, which he told me was [respondent] and her current boyfriend having sex, and then as he looked through the window, he told me that he saw them snorting meth."

Thereafter, the court issued a temporary stalking order on December 21, 2006.

Based on the above events, petitioner sought a permanent SPO against respondent under ORS 163.730 to 163.755. During the hearing on that request, respondent, on two different occasions, argued to the court that, to grant an SPO under the above circumstances, it was necessary that the court find that his communication caused petitioner a reasonable fear of "imminent and serious personal violence," that is, the communications were likely to be followed by unlawful acts. After the evidentiary hearing's conclusion, the trial court issued a permanent SPO, reasoning as follows:

"Thank you. Well, the stalking statute is pretty clear. It requires multiple contacts, unwanted contacts. I find that

those did occur. It requires that there be alarm as a result of * * * concern about safety. To be sure, petitioner is over-reactive, as we saw today, but I think that objectively looking at the matter that any objective person would also find that they would be alarming.

"It's apparent that the respondent was not only trying to investigate the petitioner as part of what he was doing, but he was spying on her and lurking around trying to get information. I find that the use of 'time out' was specifically designed to either further intimidate her, and it worked, and I have a very hard time believing that it was coincidence that he is saying 'delightful' toward the woman that he has been spurned by. It sounds much more likely that he was listening in to another conversation and was reflecting that back to her, as well.

"So is it appropriate for him to be there investigating his wife and the mother of the child in this way, and I find it's not, and I would be in her circumstance objectively very concerned about my physical safety, as well.

"Therefore, I'm going to continue the order * * *."

On appeal, respondent reiterates his argument that the SPO impermissibly interferes with his freedom of expression in violation of Article I, section 8, of the Oregon Constitution. According to respondent, the two text messages sent by petitioner—the "delightful" text message and the "time out" text message—involve only expression and therefore cannot support the SPO's issuance, because they are not legally sufficient to place a reasonable person in fear of imminent and serious personal violence from the speaker. As we understand his argument under his second assignment of error, he asks us to rule as a matter of law that the SPO is unconstitutional based on the above facts.

ORS 163.735(1) provides that,

"a law enforcement officer shall issue a citation ordering the person to appear in court within three judicial days and show cause why the court should not enter a court's stalking protective order when the officer has probable cause to believe that:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other

person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

To violate the above statute requires that a person with the requisite culpable mental state alarm or coerce another person through repeated and unwanted contacts. Where expression is involved, the Supreme Court has adopted a narrowing construction of the stalking statutes to eliminate any unconstitutional overbreadth while continuing to implement the legislature's probable intent in enacting the statutes. *State v. Rangel*, 328 Or 294, 302, 977 P2d 379 (1999).[3] Specifically, the court explained that a speech-based contact satisfies the definition of "alarm" in ORS 163.730(1) only if it constitutes a threat:

"We conclude that in defining 'alarm' in ORS 163.730(1), the legislature also contemplated, as a logical necessity, that a speech-based contact would be punishable as an element of stalking only if it constitutes a threat. If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to 'cause apprehension or fear resulting from the perception of danger,' as ORS 163.730 requires.

"* * * [A] proscribed threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts."

*Id.* at 303 (citations omitted). Also, the *Rangel* court pointed out that an SPO cannot be founded on speech-based contacts that involve " 'the kind of hyperbole, rhetorical excesses, and

---

[3] Although *Rangel* involved an overbreadth challenge to ORS 163.732, the court's construction in that case concerned elements in ORS 163.732 that are identical to the elements in ORS 163.735, the statute at issue here. It follows, in our view, that the requirements in *Rangel*, created to avoid constitutional overbreadth under Article I, section 8, also apply to ORS 163.735.

impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)). Relying on the above principles, respondent asserts that, because the content of his text messages did not include unequivocal threats to do harm to petitioner, the SPO's issuance violated his Article I, section 8, rights.

We conclude that the *Rangel* formulation is inapplicable to this case because respondent's conduct involves more than expression. The evidence demonstrates that respondent spied on petitioner and continued to lurk near her residence while she was inside. When the text messages are considered in context with those actions, respondent's conduct amounts to more than expression protected under Article I, section 8. *See, e.g.*, *DiCarlo v. McCarthy*, 208 Or App 184, 188-89, 145 P3d 178 (2006) (respondent's conduct of yelling threats while slamming his hand down on the windshield of petitioner's truck while she was sitting inside accompanied by repeated instances of driving by the petitioner's residence constituted more than constitutionally protected expression). We therefore conclude that the trial court did not err in denying respondent's motions.

Affirmed.