Argued and submitted August 21, reversed October 30, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MIKEL TROY JACKSON,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1013578; A148024

313 P3d 383

Jonah Morningstar, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela J. Walsh, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction on one count of stalking, ORS 163.732, contending that the trial court erred in denying his motion for a judgment of acquittal (MJOA) at the close of the state's case-in-chief. Specifically, defendant contends that the state was required to prove that his conduct amounted to an unequivocal threat under *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), and that the state's evidence was insufficient to establish such. We agree and reverse.

Ordinarily, "[o]ur standard for reviewing the denial of the motion for judgment of acquittal is whether, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Paragon*, 195 Or App 265, 267, 97 P3d 691 (2004). Although we are reviewing the denial of an MJOA, the dispositive question in this case presents a question of law that we review for legal error.

The facts are undisputed and a brief summary of them will suffice for purposes of this opinion. Defendant lived next door to the Nelson family. Defendant began a series of interactions with the Nelsons that they considered unwelcome. The last incident occurred on October 31 when defendant began yelling at Mr. Nelson, who described the encounter by stating, "When I went outside is when [defendant] wanted to fight me. He *** called me a pussy. He said, 'My dad's a pussy. The neighbor's a pussy. Everybody's a pussy.' He's a bodybuilder. He exposed his shirt, showed me his *** torso, abdomen, whatever. He wanted to fight me." Mr. Nelson stated that defendant continued to "egg[] it on," and was trying to "lure" him over into a fight. There is no evidence that defendant approached Mr. Nelson during the encounter. Mr. Nelson eventually responded, "Why don't you come over and kick my ass, then?" Mr. Nelson began to approach defendant, but Mrs. Nelson came out of the house and defused the situation by telling defendant to leave them alone and Mr. Nelson to come inside. Mrs. Nelson testified that she did not hear precisely what defendant was saying during the encounter, but that, in general terms, he was

"just * * * pestering my husband to come over and beat him up."

Defendant was arrested and charged with criminal stalking under ORS 163.732. The information alleged, as pertinent:

"[D]efendant * * * on or about October 31, 2010, in Clackamas County, Oregon, did unlawfully and knowingly alarm [Mr.] Nelson by engaging in repeated and unwanted contact with [Mr.] Nelson by making threatening statements to [Mr.] Nelson, this contact causing [Mr.] Nelson reasonable apprehension regarding the personal safety of [Mr.] Nelson, and it being objectively reasonable for a person in the situation of [Mr.] Nelson to be alarmed by the contact."

ORS 163.732 defines the crime of stalking:

"(1)   A person commits the crime of stalking if:

"(a)   The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

"'Repeated' means two or more times." ORS 163.730(7).

To avoid concerns that the criminal stalking statute was unconstitutionally overbroad for its potential to improperly restrict speech under Article I, section 8, of the Oregon Constitution, the Oregon Supreme Court limited the reach of ORS 163.732 in *Rangel*, 328 Or at 298-306. Thus, if the charged conduct is of a "purely communicative nature," *State v. Sierzega*, 236 Or App 630, 637, 237 P3d 234 (2010) (internal quotation marks omitted), it must also be shown that the communication amounts to a "threat." *Rangel*, 328 Or at 303. A threat "is a communication that instills in the addressee a fear of imminent and serious personal violence

from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id.* A threat does not include "'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.'" *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)).

As noted, to convict a person of stalking under ORS 163.732, the state must, among other things, prove that there were "repeated contacts"—that is, the state must prove that there were at least two contacts. In this case, the state charged defendant based only on the statements that he made on October 31, *i.e.*, the state charged defendant on the basis of expressive conduct. Thus, even if we were to assume the existence of an unwanted contact before October 31, the state was required, as a matter of law, to show that defendant's statements on October 31 amounted to a "threat" as defined in *Rangel* in order to establish a second contact. At oral argument, the state conceded that the October 31 statements did not constitute a threat under *Rangel*. We agree and accept that concession. Accordingly, the trial court erred in denying defendant's MJOA.

Reversed.