Argued and submitted January 24, reversed August 2, 2000

Teresa R. WEATHERLY,
*Respondent,*

*v.*

David WILKIE,
*Appellant.*

(18-99-01487; CA A105700)

8 P3d 251

James M. O'Kief argued the cause for appellant. With him on the brief was Morris & O'Kief.

Ann Kneeland argued the cause for respondent. On the brief was Stephen C. Kanaga.

Before Landau, Presiding Judge, and Armstrong and Linder, Judges.

LINDER, J.

## LINDER, J.

Respondent appeals from a judgment granting petitioner's request for a permanent stalking protective order (SPO). The sole issue on appeal is whether the evidence is sufficient to support the order. On *de novo* review of the facts (ORS 19.415(3); *Hanzo v. deParrie,* 152 Or App 525, 537, 953 P2d 1130, *rev den* 328 Or 418 (1998)), we reverse.

The controlling legal principles are not disputed. Briefly summarized, and as applicable to this case, the civil stalking statute authorizes a court to issue an SPO against someone who intentionally, knowingly or recklessly makes "repeated and unwanted contact" with another person, thereby causing that person to be alarmed or coerced. ORS 30.866(1)(a). The contact may consist of, among other things, coming into the person's visual or physical presence, following the person, waiting outside the person's home, property, place of work or school, or sending or making written communications of any kind. *See* ORS 163.730(3) (providing definition of "contact" for both the civil and criminal stalking statutes). Additionally, it must be objectively reasonable for the contacted person to have been alarmed or coerced by the contact. ORS 30.866(1)(b). Finally, the contact must also cause the contacted person reasonable apprehension regarding his or her personal safety. ORS 30.866(1)(c).

Thus, the statute has both subjective and objective components. The contacted person must in fact be alarmed or coerced by the contacts, and the contacts must in fact cause the person apprehension regarding his or her personal safety. Moreover, the contacted person's alarm or coercion must be objectively reasonable. Likewise, the apprehension regarding the contacted person's personal safety must be "reasonable." The dispositive question in this case is whether the evidence satisfies the objective requirements of the statute. On the limited record before us, we find that the evidence is insufficient in that regard.

The record reveals little about the history of the parties' relationship. We know only that petitioner and respondent are ex-spouses who dissolved their marriage in May 1997. After the dissolution, the parties continued to live in

the same community and, for a period of time, continued to work for the same real estate agency. At the hearing to determine whether a permanent SPO should issue (*see* ORS 30.866(2)), petitioner testified to several contacts by respondent that occurred after the dissolution and during about a one-and-one-half-year period preceding the filing of the petition.[1] More particularly, petitioner explained that, on one occasion, respondent and his girlfriend drove by her in a store parking lot, and respondent smiled and waved at her. Petitioner also observed respondent drive by her home—twice, she believed—in the summer of 1998.

Petitioner also described contacts by respondent that were explicitly communicative. Once during the one-and-one-half-year period, respondent left petitioner a voice-mail message telling her to call him. Also, while the parties both continued working for the same real estate agency, flyers for respondent's real estate listings were placed in petitioner's office mailbox; petitioner believed that respondent directed them to be distributed to her. Petitioner also testified that respondent sent letters to her home. The record is unclear as to when the letters were sent and received, and whether those contacts were within the relevant time period. Moreover, petitioner's descriptions of their contents were vague and inconsistent. Only one of the letters was actually placed into evidence. That letter was a handwritten postcard sent by respondent, while he was vacationing in Italy, containing the following message:

> "While driving by Mt. Vesuvius for some reason thought of you. Having a great vacation. Think you should help with the next! This is an attempt to collect a debt. Its time for you to pay your court judgments! Dave W."

The debt to which the postcard referred was an uncollected personal loan that respondent made to petitioner and an

---

[1] Under the statute, the court may consider contacts made during a two-year period preceding the filing of the petition. Petitioner previously had sought an SPO against respondent within that two-year period, but the court declined to issue one. The trial court in this case consequently ruled that it would consider only contacts made by respondent after the dismissal of petitioner's prior petition, a ruling that is not challenged in this case. The relevant incidents discussed by petitioner appear to cover about a one-and-one-half-year period preceding the current petition and subsequent to the prior petition.

unpaid attorney fee award, both of which had been reduced to court judgments in respondent's favor. Finally, petitioner testified to one other written contact by respondent relating to those judgments—*i.e.*, a copy of a legal document that respondent filed with the bankruptcy court objecting to petitioner's effort to discharge those debts through bankruptcy.

In her testimony, petitioner stated that respondent's contacts upset her. Representative of petitioner's descriptions is the answer that she gave when asked if the bankruptcy objection caused her alarm:

> "Yes, it did. Because it's a contact. And that's what he—he keeps making a contact. Now he always has a good excuse, and he'll continue to do it in a way that—that he can explain it away, but it's a contact. And it's a threatening contact."

Petitioner specifically identified the postcard from Italy as alarming her in the same way.

In his testimony, respondent offered his explanation for his contacts with petitioner. Respondent acknowledged that, approximately a year after the dissolution of their marriage, he drove by petitioner and waved when he saw her in the store parking lot; he testified that he did so because he thought that the past was behind them. Respondent also conceded that he drove by petitioner's house, although he claimed he did so only once. He took that action, he testified, in an effort to determine whether petitioner's van matched the van that his girlfriend believed had been following her. Respondent stated that he left the voice-mail message that petitioner described; his explanation was that he had received a page from petitioner and merely was attempting to return her call. Regarding the real estate flyers, respondent testified that they were routinely distributed to all real estate agents in the office as a matter of office policy. Respondent stated that he sent petitioner the postcard from Italy to encourage her to pay the money she owed him under the outstanding court judgments. Finally, respondent explained that he sent petitioner a copy of his bankruptcy objection pursuant to instructions from the court clerk.

Viewed both singly and in combination, we are unpersuaded that respondent's contacts would have caused a reasonable person in petitioner's position to feel alarmed, or reasonably to be apprehensive about her personal safety.[2] None of the contacts is either implicitly or explicitly threatening. Nor do they become so when viewed collectively. Over a one-and-one-half-year period, they amount to one wave of acknowledgment in a store parking lot; one, or at most two, drives past petitioner's home; one voice-mail message inviting a return call; a few apparently routine distributions of real estate listings in the parties' common place of employment; and written communications (legal and personal) regarding their unresolved financial dealings that were objectively ordinary in nature. Those contacts do not add up to an objective basis for alarm, coercion, or apprehension of risk to personal safety of the kind required by the statute.

We note that petitioner also testified to other contacts, ones that had more implicitly threatening content. Specifically, she testified that she believed respondent was responsible for making numerous hang-up phone calls, flattening her car tires, releasing her dog from its leash, setting a fire (otherwise not described) at her home, and leaving a bottle bomb in her neighbor's mailbox. The record provides no detail about the circumstances or timing of those incidents, nor is there anything in the record, beyond pure speculation, to tie respondent to them. When petitioner attempted to introduce additional evidence regarding those alleged acts of vandalism, respondent objected on relevancy grounds, and

---

[2] The parties dispute whether the expressive contacts on which petitioner relied in seeking an SPO qualify as unambiguous, unequivocal threats that were specific to petitioner, thereby satisfying the constitutional free expression analysis discussed in *State v. Rangel,* 328 Or 294, 302-06, 977 P2d 379 (1999), and *Hanzo,* 152 Or App at 542-44. They further disagree as to which contacts properly are to be considered expressive in nature. On the basis of those disagreements, they take differing views as to which contacts we may consider in assessing the sufficiency of the evidence to support the SPO. We do not need to resolve that subissue, however. Even assuming that all of the contacts may be considered, we find them insufficient to satisfy the statute's requirement of contacts that reasonably would cause alarm or coercion and apprehension regarding the victim's personal safety. We therefore resolve the case solely on the statute's requirements. *See Leo v. Keisling,* 327 Or 556, 562, 964 P2d 1023 (1998) (court will not decide constitutional issues if there is a subconstitutional basis for decision).

the trial court sustained those objections because of petitioner's inability to connect the incidents to respondent. The record suggests that the trial court, at that point, decided not to consider any of that testimony. In all events, on *de novo* review, we decline to attribute any weight to that evidence.

In sum, considering only the incidents that are adequately tied to respondent, and disregarding the others, we find the evidence insufficient to support the SPO. We emphasize that our conclusion should not be understood as a holding that ostensibly innocuous contacts of the kind we have in this case can never give rise to objectively reasonable alarm and apprehension regarding personal safety. They may, depending on the particular facts of the case and the circumstances of the parties. *See, e.g., Delgado v. Souders,* 146 Or App 580, 934 P2d 1132, *rev allowed* 326 Or 43 (1997) (contacts created reasonable apprehension of risk to personal safety where relative stranger persistently and stealthily followed petitioner, repeatedly appearing next to her or within feet of her). Against some other or more extensively described history of dealings between the parties, the contacts in this case conceivably might do so. But here, the parties' history, as reflected in our limited record, provides no context giving the relevant contacts added import or ominous meaning. We have no evidence, for example, of prior violence, explosive emotions, unstable behavior, or threatening dealings between the parties. We know only that they were once married, that they obtained a dissolution, and that they had unresolved financial issues. Petitioner's reaction to respondent's contacts is sincere and subjectively genuine.[3] But that is not enough. A petitioner's reaction must be objectively reasonable as well. On this record, we are not persuaded that petitioner met that standard.

Reversed.

---

[3] We base that observation in part on the deference we ordinarily accord trial courts on matters of credibility. Also, the record reflects that petitioner suffers from post-traumatic stress disorder as a result of something that happened to her in the military 20 or more years ago and that, as a consequence, she may be particularly sensitive to anxiety-provoking events.