Submitted December 20, 2007 reversed September 24, 2008

Jacalyn N. FARRIS,
*Petitioner-Respondent,*

*v.*

Christopher Charles JOHNSON,
*Respondent-Appellant.*

Lane County Circuit Court
180504410; A129491

193 P3d 66

Edmund J. Spinney filed the brief for appellant.

Vanessa L. Carter and Shepard Law Offices, P.C., filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Petitioner obtained a civil stalking protective order (SPO) against respondent based on his contacts with petitioner, her husband, and her son. On appeal, respondent assigns error to the trial court's judgment entering the SPO. We review *de novo, Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), giving deference to the trial court's express and implicit credibility determinations, *Pinkham v. Brubaker*, 178 Or App 360, 362, 37 P3d 186 (2001). Because no more than one of the contacts of which petitioner complains could qualify as the basis for an SPO, we reverse.

In February 2004, petitioner witnessed an altercation between her son and respondent. According to her later testimony, around the same time period she saw respondent driving past her home while he "slow[ed] down and look[ed]." The record does not establish that this occurred more than once.

Petitioner next saw respondent about a year later, in March 2005. In the interim, respondent had been charged with assault in connection with the previous year's altercation, and petitioner had been named as a potential witness. Petitioner saw respondent while he was canvassing her neighborhood in search of witnesses to the previous year's altercation. When respondent saw petitioner looking out her door, he shouted from across the street and accused her of being a liar. Petitioner then sought, and obtained, a temporary SPO.

Two court hearings followed. At a March 2005 hearing, the court continued the temporary SPO until July. In July, the court heard arguments on whether to issue a permanent SPO. In addition to petitioner's testimony regarding the incidents described above, petitioner's husband testified that, before the March hearing, as he had been waiting to enter the courtroom, respondent "came right up next to him" and "glared [him] down." As a result of that incident, petitioner's husband believed respondent to be "a very scary person." Petitioner also described an encounter with respondent

at the March hearing. On entering the courtroom, respondent approached petitioner and began shouting at her, accusing her of having a conflict of interest. Respondent ignored two requests from petitioner and the attorney with whom she was speaking to leave. Only when the attorney contacted a court official and a police officer entered the courtroom did respondent move away from petitioner and the attorney. At the close of that hearing, the court entered a permanent SPO.

ORS 30.866, the civil stalking statute, authorizes a court to issue an SPO against a person who "intentionally, knowingly or recklessly engages in repeated and unwanted contact with [another] person or a member of that person's immediate family or household thereby alarming or coercing the other person[.]" ORS 30.866(1)(a). The contact may consist of, among other things, coming into the person's visual or physical presence; following the person; waiting outside the person's home, property, place of work, or school; or sending or making written communications of any kind. *See* ORS 163.730(3) (providing the definition of "contact" for the civil stalking statute); *Weatherly v. Wilkie,* 169 Or App 257, 259, 8 P3d 251 (2000). Because an SPO may issue only on proof of "repeated" contact, a petitioner must establish that at least two contacts caused her to be alarmed or coerced and to be apprehensive about her personal safety or the safety of a member of her immediate family or household. *See* ORS 30.866(1)(c) (requiring reasonable apprehension); ORS 163.730(7) (defining "repeated"). It must be objectively reasonable for the petitioner to have been alarmed or coerced. ORS 30.866(1)(b). "Alarm," for the purposes of the issuance of an SPO, means "to cause apprehension or fear resulting from the perception of danger." ORS 163.730(1). "Coerce" means "to restrain, compel or dominate by force or threat." ORS 163.730(2).

■ ■  When a petitioner relies on contacts that involve expression, we apply a more stringent standard than the statute sets out in order to avoid constitutional difficulties. *See State v. Rangel,* 328 Or 294, 306, 977 P2d 379 (1999). That standard requires the contacted person to prove that the contacts involved threats that "instill[ ] in the addressee a fear of imminent and serious personal violence from the speaker, [are] unequivocal, and [are] objectively likely to be

followed by unlawful acts." *Id.* at 303. The types of threatening contacts that may support the issuance of an SPO do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)). We turn to the incidents of alleged stalking in this case to determine whether, taken as a whole, they meet the foregoing requirements of the law.

■ In challenging the sufficiency of the evidence, respondent places special focus on the expressive contacts—his accusations that petitioner is a liar (shouted from across the street in March 2005) and that she had a conflict of interest (on entering the courtroom at the March 2005 hearing).[1] Respondent contends that neither contact meets the exacting standard required for potentially protected expression. Petitioner concedes that respondent is correct, and we agree. Neither expressive contact unequivocally involved a threat that would instill in a reasonable person fear of imminent and serious personal violence. Instead, they were "impotent expressions of anger or frustration" that, although disturbing, are protected speech. Accordingly, we cannot consider them as contacts in determining whether the statutory standards for issuance of the SPO were satisfied.

Nevertheless, those expressive contacts are relevant context for respondent's nonexpressive contacts with petitioner. *See Castro v. Heinzman*, 194 Or App 7, 14-16, 92 P3d 758 (2004). Those nonexpressive contacts include (a) respondent's altercation with petitioner's son, (b) his driving past petitioner's home, and (c) his approaching and glaring at petitioner's husband shortly before the hearing on the temporary SPO. Thus, in considering the effect of those contacts

---

[1] Respondent's accusation that petitioner had a conflict of interest occurred after petitioner sought the temporary SPO. Respondent contends that, under ORS 30.866(6), only contacts that occurred before the filing of the petition can be considered at a hearing on whether to issue an SPO. Respondent further asserts that ORCP 23 B, which allows issues not raised by pleadings to be tried by express or implied consent, is inapplicable. Petitioner disagrees, contending that respondent's failure to object to her evidence about the post-SPO contacts indicates his consent to consideration of that evidence. For the purposes of our analysis, we assume, without deciding, that petitioner's position is correct. Accordingly, we consider both post-pleading contacts.

on petitioner and on a reasonable person in petitioner's position, we may consider as context respondent's interaction with petitioner in her neighborhood and in court. From that evidence, we conclude that the requirements for issuance of an SPO were not met as to at least two of the three incidents and that, as a consequence, petitioner is unable to establish the requisite repeated contacts to support the SPO.

■■ We begin with respondent's conduct in driving past petitioner's home. That contact is insufficient because the record does not establish that respondent possessed the requisite knowledge that the contact was unwanted. We note that petitioner's failure to tell respondent that she did not want further contact with him is not conclusive; a petitioner is not required to object to an unwanted contact. *Courtemanche v. Milligan*, 205 Or App 244, 250, 134 P3d 999 (2006). Rather, a petitioner can generally establish that a respondent was aware that a contact was unwanted by establishing that the respondent was "subjectively * * * aware of a substantial and unjustifiable risk that the contacts in question [were] * * * unwanted by the recipient, *and then consciously and unreasonably disregard[ed] that risk.*" *Delgado v. Souders*, 334 Or 122, 133, 46 P3d 749 (2002) (emphasis added); *see also id.* at 137-38 (where the respondent and the petitioner were strangers, the respondent's physical movements in close proximity to the petitioner in deserted areas, coupled with his furtive "side glances" in her direction and his pattern of appearing in the petitioner's presence on multiple occasions in the preceding months, were sufficient to establish the respondent's awareness that his "repeated presence was unwanted"). Here, however, although respondent came into petitioner's visual presence when he drove by her home, we cannot say, on this record, that respondent was aware of a substantial and unjustifiable risk that petitioner did not want him within her visual presence and that he then consciously and unreasonably disregarded that risk. The record describes a single incident in which respondent drove by petitioner's home while he slowed down and looked. The record contains no evidence that respondent's conduct was furtive or repetitious. Accordingly, we cannot infer from respondent's conduct that he was aware that the contact was unwanted.

■ We next address respondent's encounter with petitioner's husband outside the courtroom. Because respondent

had been served with a temporary SPO, he clearly was aware that the contact with petitioner's husband was unwanted. The next question is whether the contact alarmed petitioner. As noted earlier, "alarm" refers to "apprehension or fear resulting from *the perception of danger*." ORS 163.730(1) (emphasis added). The problem here is that the record does not demonstrate that petitioner learned of the contact at all. Her husband did not testify that he recounted his experience to her; his testimony merely described the incident and stated his conclusion that respondent was "a very scary person." He neither articulated the encounter's effect on petitioner nor made any other statements that would allow us to infer, on this record, that petitioner was even aware of it. Accordingly, that contact cannot be used to support the issuance of an SPO.

■ The sole remaining contact is respondent's altercation with petitioner's son. Even assuming that contact is a qualifying contact, an SPO cannot be issued based on a single contact. *See* ORS 163.730(7) (defining "[r]epeated" as "two or more times"); *Jennings v. Gifford*, 211 Or App 192, 197, 154 P3d 163 (2007) (a single contact cannot justify the issuance of an SPO). Without the requisite evidence of repeated unwanted contacts that caused petitioner to be alarmed or coerced, there was no basis to issue an SPO.

Reversed.