Submitted June 18, 2009, reversed March 17, 2010

Marie B. SWARRINGIM,
*Petitioner-Respondent,*

*v.*

Mathew R. OLSON,
*Respondent-Appellant.*

Lane County Circuit Court
180807477;
A138928 (Control)

Marie B. SWARRINGIM,
*Petitioner-Respondent,*

*v.*

Michael R. OLSON,
*Respondent-Appellant.*

Lane County Circuit Court
180807478;
A138929

227 P3d 818

Issac R. Jackson filed the brief for appellants.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Respondents appeal stalking protective orders (SPOs) entered against them pursuant to ORS 30.866, prohibiting them from having contact with petitioner or her family. Respondents argue that the evidence is insufficient to warrant the issuance of the orders. On *de novo* review, *Osborne v. Fadden*, 225 Or App 431, 433, 201 P3d 278, *rev den*, 346 Or 213 (2009); *Hanzo v. deParrie*, 152 Or App 525, 536-37, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we agree with respondents and reverse.

■ ■ To obtain an SPO against a person under ORS 30.866(1), a petitioner must demonstrate by a preponderance of the evidence that

> "(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

> "(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

> "(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 30.866(1) has both subjective and objective components. To satisfy the subjective component, the petitioner must show that he or she was alarmed or coerced by the contacts, and that the contacts caused apprehension regarding his or her personal safety or the personal safety of a member of his or her immediate family or household. ORS 30.866(1)(a), (c); *Weatherly v. Wilkie*, 169 Or App 257, 259, 8 P3d 251 (2000). To satisfy the objective component, "the contacted person's alarm or coercion must be objectively reasonable" and that person's apprehension for his or her personal safety must also be objectively reasonable. ORS 30.866(1)(b); *Pinkham v. Brubaker*, 178 Or App 360, 372, 37 P3d 186 (2001); *Weatherly*, 169 Or App at 259.

ORS 30.866(1) also requires that the petitioner establish that the contacts that are the basis for the petition

were repeated and unwanted. "Repeated" contact means two or more contacts within the previous two years. ORS 30.866(6); ORS 163.730(7). The contacts may include, among other things, coming into the person's visual or physical presence; following the person; waiting outside the person's home, property, place of work, or school; speaking with the person; or sending or making written communications of any kind. ORS 163.730(3).

■■    If the contact involves speech, Article I, section 8, of the Oregon Constitution requires proof that the contact constitutes a threat. A threat "is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). But a threat does not include "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985).

■    At issue in this case is the sufficiency of the evidence that was the basis for the issuance of an SPO against two persons, Michael and Mathew Olson, who are father and son and are neighbors of petitioner. Petitioner testified that she and her family moved into their Springfield neighborhood, next door to respondents, about two and a half years ago. Within a few weeks, respondents began bullying them. Petitioner believes that respondents are retaliating against them for complaints to animal control and the city's code enforcement officers that other neighbors have made about respondents. We describe the incidents related to each respondent.

We begin with the incidents involving the son, Mathew. Shortly after petitioner's family moved into the neighborhood, in approximately August 2007, respondent Mathew Olson, who is 18 years of age, pushed petitioner's 14-year-old son down to the ground, refusing to allow him to cross a park.

Petitioner testified that, in March 2008, Mathew parked his car in front of her driveway, blocking her vehicle. Petitioner's husband bumped Mathew's car out of the way with his van, causing damage to the car. Mathew came out

and began yelling obscenities. Petitioner testified that Mathew threatened to destroy petitioner's property and told petitioner that he could have her son beat up. Petitioner's husband testified that Mathew warned him that he knows people at the son's school who will slit his throat. Petitioner and her husband testified that they went back into their house, aware that Mathew was going to call the police. Petitioner testified that she and her husband were "more than happy" with that, because the police could help the parties exchange insurance information. Respondent's counsel asked petitioner:

"Q. Okay. So let me get this straight. You guys were completely calm and they were angry; is that what happened?

"A. Basically, yes.

"Q. Okay.

"A. Because we—my husband knew that he had hit their vehicle and knew—you know, we had no reason to be angry at them other than the fact that they were yelling obscenities which is nothing unusual."

In April 2008, shortly before the hearing in this case, Mathew cursed at petitioner's nine-year-old daughter while she was walking home from school and said that he would find someone to beat her up. She is now afraid to walk home from school.

Petitioner also complained about contacts involving the father, Michael Olson. Petitioner testified that in August 2007, after Mathew pushed down her son, she tried to have a conversation with Michael, but that he became upset and started calling her names. Petitioner testified that, after that incident, she tried not to have contact with either Mathew or Michael.

Petitioner testified that, on March 30, 2008, Michael "and another male in his vehicle pulled in and out of our driveway revving their engine, putting their bright lights on our house late at night, and honking their horn." Petitioner testified that she called the police and that, before the police arrived, Michael and the other person in his vehicle went into Michael's house. Petitioner testified that similar incidents

have occurred "multiple times," involving multiple vehicles. Petitioner and her husband described an incident in which Michael drove past her husband in his truck and simulated a gun firing motion while screaming obscenities.

Petitioner testified that, on the evening of the day that the SPO was issued, someone "egged" petitioner's house and vehicles and slashed a tire on petitioner's husband's van. Petitioner suspected respondents, but she did not see them commit those acts.

Petitioner did not testify that respondents' conduct caused her to feel alarm or coercion or to be fearful for her own personal safety. However, she concluded her own direct testimony by stating,

> "all we're asking for is just distance. I would like them not to speak to my children especially. I find it disturbing that an adult male—two adult males speak to my children and make threats to them and make them feel fearful."

We turn to the legal sufficiency of the foregoing evidence of unwanted contacts, beginning with those involving Mathew. In short, we find the evidence insufficient to satisfy the requirements of the statute. Although there is no direct evidence that petitioner or her husband feared for their own personal safety or the safety of their children as a result of the various incidents involving Mathew, on this record we find that petitioner could reasonably be fearful for the safety of her children as a consequence of the three incidents involving the children. However, two of those incidents—the one in which Mathew threatened to have someone beat up petitioner's son or slit his throat and the one in which Mathew cursed at petitioner's nine-year-old daughter—involved only speech. Because of that, the more stringent standard required by the Oregon Constitution applies, and petitioner must establish that Mathew's communications instilled a fear of imminent and serious personal violence from Mathew, that the communication was unequivocal, and that it was objectively likely to be followed by unlawful acts. *Rangel*, 328 Or at 303. On this record, the evidence falls short of establishing that either communication instilled a fear of imminent violence from Mathew. In both instances, Mathew spoke of what he would have someone else do at some point in the

future, and there is no evidence that petitioner, her husband, or her daughter feared that imminent violence from Mathew would result. In light of that finding, only one contact remains—the bullying of defendant's son in August 2007—and that is not sufficient to justify the imposition of an SPO. ORS 30.866(6); ORS 163.730 ("Repeated" contact means two or more contacts within the previous two years.).

■      Concerning the SPO against respondent Michael Olson, we conclude that, even applying the less-stringent standard for nonexpressive contacts, the evidence falls short of establishing that Michael's conduct caused petitioner or a family member reasonable apprehension for personal safety. ORS 30.866(1)(c). Although the conduct may have been obnoxious, petitioner did not testify that either she or family members actually feared for their personal safety as a result of Michael's conduct, and there is no evidence from which that finding can be inferred. We conclude, accordingly, that the trial court erred in entering the SPO against Michael.

Reversed.