Argued and submitted September 7, 2010, reversed February 2, 2011

Stephen Mathew GUNTHER,
*Petitioner-Respondent,*

*v.*

Mary Rose ROBINSON,
*Respondent-Appellant.*

Multnomah County Circuit Court
090506614; A142981

248 P3d 20

Jennie L. Clark argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Respondent appeals after the trial court issued a permanent stalking protective order (SPO) against her. She contends that petitioner failed to establish repeated, unwanted contacts within the two years before the filing of the SPO petition, as required by ORS 30.866 and ORS 163.730.[1] We exercise our discretion to review *de novo*, ORS 19.415(3)(b), and reverse.

The parties have been neighbors for approximately 15 years. Their driveways are next to each other, and their backyards are linked as well. Respondent had a six-foot-high fence built between the two yards, but left a small gate in the fence that granted her access to petitioner's yard.

At various times, respondent yelled at petitioner, his wife, and their children when they walked by. In addition, petitioner and his wife suspected that respondent was responsible for vandalizing their car and shooting a BB gun, making holes in a window that faced respondent's back yard; those incidents occurred at least eight years before petitioner sought the SPO at issue. Over 10 years before petitioner sought the SPO, respondent threw sticks and rocks at petitioner and his wife as they were walking to their car in their driveway. Petitioner and respondent had a physical confrontation as a result; both petitioner and respondent called the police, but no charges were filed against either party. About five years before this proceeding, respondent shook a beer at petitioner. More than two years before this proceeding, respondent called the police and falsely accused petitioner's daughter of throwing eggs and rocks at respondent's house. Petitioner's daughter testified that "we had other police encounters like my parents being accused and stuff," but she did not provide any timeframe for those other accusations.

Petitioner testified that respondent had "a practice, it seems trivial, she sweeps yard debris and stacks a pile of leaves and twigs and the cigarette butts, and tissue paper, pop cans and cigarette packs and beer cans and any other garbage that's literally thrown into my driveway." Once,

---

[1] Respondent also sought an SPO against petitioner, and that case was consolidated with petitioner's case. Respondent's petition was denied.

within a few months of the filing of the SPO petition, petitioner was pulling out of his driveway and noticed respondent sweeping garbage and throwing it into his driveway. When he asked her to pick up the garbage, she told him, "[S]hut up, you son of a bitch. Sieg heil, heil Hitler," and she marched up and down the sidewalk. Petitioner rolled his eyes, put his window up, and left.

About one month after that incident, petitioner's daughter was awakened at around 2:00 a.m. by the sound of someone driving by quickly and honking; when she went outside to see what was happening, respondent screamed at her to "stay out of my f-ing life." Soon after petitioner's daughter went back to bed, respondent entered petitioner's yard, screamed obscenities, and threw rocks at petitioner's daughter's window. Petitioner's daughter was frightened by the incident.

Petitioner felt that that incident "hit[ ] an alarm," and he filed his petition for an SPO shortly after the incident. He felt that his family's safety was threatened, especially since that event, because of the threat against his daughter. Petitioner was concerned by the way that incidents would occur sporadically and without reason. He also was concerned because he believed that respondent was mentally unstable and that she possessed a handgun, which he saw her cleaning once, more than five years before this proceeding. He suspected that respondent still owns firearms.

When the trial court asked petitioner to focus on whether respondent's conduct, such as throwing garbage, was merely annoying or whether it caused petitioner fear, petitioner answered that he felt that his and his family's safety was threatened. He further testified that, when respondent entered his yard and threw rocks, in light of his suspicion that she possessed firearms, he felt that she posed a risk to his family.

The trial court granted the SPO against respondent, finding that respondent had, within the last two years, "been threatening in her words" and that "the constant series of small events" created a reasonable basis for apprehension for the safety of petitioner and his household. The court found that petitioner was alarmed or coerced by the contacts.

Respondent appeals, contending that petitioner did not establish sufficient unwanted contacts within the two-year period before the filing of the SPO petition. We reverse.

■     ORS 30.866(1) provides that a petitioner may bring an action for an SPO against a person if

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

" 'Alarm' means to cause apprehension or fear resulting from the perception of danger." ORS 163.730(1). " 'Coerce' means to restrain, compel or dominate by force or threat." ORS 163.730(2). To be "repeated," contact must occur two or more times. ORS 163.730(7). An action for an SPO must be commenced within two years of the conduct giving rise to the claim. ORS 30.866(6).

■     Where an alleged contact involves speech, under Article I, section 8, of the Oregon Constitution, there must be proof that the contact constituted a threat. *Swarringim v. Olson*, 234 Or App 309, 312, 227 P3d 818 (2010). In this context, a "threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) (citing *State v. Moyle*, 299 Or 691, 703-05, 705 P2d 740 (1985)).

Here, most of the contacts happened more than two years before petitioner sought an SPO. It is unclear when some of the incidents of respondent's screaming occurred; in any event, to the extent that those incidents were timely but involved only screaming, without a threat, they do not support issuance of an SPO. That leaves two incidents that

occurred within two years before the filing of SPO petition: (1) the incident when respondent threw garbage into petitioner's driveway and yelled, "heil Hitler," and (2) the incident when respondent threw rocks at petitioner's daughter's window.

We conclude that the first incident was not a contact that can support issuance of an SPO. As to the speech involved in the incident, petitioner understandably was offended by respondent's words, but those words did not constitute a threat and thus cannot support the issuance of an SPO. As to respondent's conduct—throwing garbage into petitioner's driveway as petitioner was going to pull out of the driveway—petitioner did not testify that he felt alarmed or coerced by that conduct. Rather, we find, that incident caused petitioner annoyance, but he did not feel alarmed or coerced until the second incident "hit[ ] an alarm" and caused him to feel apprehension for his children's safety.

Respondent does not deny that the second incident was the sort of contact that can support issuance of an SPO; on this record, however, it is the only such contact within the pertinent two-year period. Two contacts are required.

Reversed.