Argued and submitted January 9, affirmed December 17, 2014

Susan Lee LAYNE,
*Petitioner-Respondent,*

*v.*

Kenneth Frank MacDONALD,
*Respondent-Appellant.*

Multnomah County Circuit Court
101217455; A149342

340 P3d 773

Donald J. Molnar argued the cause and filed the briefs for appellant.

Helen C. Thompkins argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and Duncan, Judge, and Schuman, Senior Judge.*

SCHUMAN, S. J.

---

* Duncan, J., *vice* Wollheim, S. J.

## SCHUMAN, S. J.

The trial court in this case granted petitioner's motion for a permanent stalking protective order (SPO) against respondent, her ex-husband. Respondent appeals, contending that petitioner did not establish that he had engaged in the two predicate contacts that must be proven in order to justify an SPO. We disagree with respondent, and we therefore affirm.

The following facts are supported by constitutionally sufficient evidence. *See Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010) (trial court's findings of fact in stalking cases reviewed for any evidence). In 2009, when petitioner and respondent were living in Washington and still married, respondent on at least one occasion, beat and choked petitioner. He was subsequently convicted of felony assault. One provision of his sentence prohibited him from having any contact with petitioner. A divorce followed. Petitioner subsequently moved to Multnomah County. Respondent, however, continued to contact her. On at least one occasion, he told her, over the telephone, that if she ever reported his violations of the no-contact provision of the assault sentence, he would "send his skinhead friends to come take care of [her]." He also told her over the telephone that he was going to "fuck [her] up." And he posted on his website photographs of petitioner's Multnomah County house, taken from a cemetery located across the street from it.

In 2010, within two years of the Washington assault, petitioner filed a motion for an SPO, alleging that, in addition to the assault, respondent had made the contacts described above. After a hearing, the trial court granted petitioner's motion. Respondent appeals.[1]

Oregon's civil stalking statute, ORS 30.866, provides, in part:

"(1)   A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

---

[1] The no-contact order in respondent's assault sentence expired in May 2014. Petitioner's SPO is therefore not redundant.

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

A "contact," for purposes of ORS 30.866, and as relevant to this case, is defined in ORS 163.730(3):

"'Contact' includes but is not limited to:

"* * * * *

"(c)   Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d)   Sending or making written or electronic communications in any form to the other person;

"(e)   Speaking with the other person by any means;

"* * * * *

"(g)   Committing a crime against the other person[.]"

Further, in *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999), the Supreme Court imposed a narrowing construction on the criminal stalking statute, subsequently applied to the civil statute, *Hanzo v. deParrie*, 152 Or App 525, 542, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), holding that a contact involving expression cannot underlie a stalking conviction unless the expressive contact was a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts."

Thus, in sum, to qualify for an SPO, a petitioner must show by a preponderance of the evidence that the respondent made at least two contacts with the petitioner or the petitioner's family within the two years immediately

preceding the filing of the motion for an SPO; the contacts were intentional, knowing, or reckless; the contacts caused the petitioner to experience alarm or coercion regarding the petitioner or petitioner's family's personal safety; the alarm or coercion was objectively reasonable; and, if a contact involved expression, then, under *Rangel*, the contact was a threat that instilled in the addressee a fear of imminent and serious personal violence from the speaker, was unequivocal, and was objectively likely to be followed by unlawful acts. ORS 30.866; *Brown v. Roach*, 249 Or App 579, 583-84, 277 P3d 628 (2012).

The trial court reached two legal conclusions that are at issue here. We review them for legal error. *Brown,* 249 Or App at 580. The first was that the interactions qualified as "contacts." The second was that the contacts threatened harm that was "imminent." We treat those issues as legal because they implicitly interpret statutory terms, and the interpretation of statutes is a legal issue. *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 372, 111 P3d 762, *rev den*, 339 Or 406 (2005) ("We review such questions of statutory interpretation for errors of law.").

Because the assault was concededly a qualifying contact, ORS 163.730(3)(g) ("[c]ommitting a crime against the other person" is a contact), the sole question now before us is whether the trial court correctly concluded that respondent's telephonic threats to send his "skinhead" friends to harm petitioner if she reported his violations of the assault conviction's no-contact provision, or his telephonic threat to "fuck [her] up," or both, were qualifying contacts.[2] It is undeniable that they were contacts addressed to petitioner. *See* ORS 163.730(3)(e) ("Speaking with the other person by any means" is a contact.). Further, the court found facts

---

[2] Preliminarily, we note that respondent, in his opening brief, argues that the trial court erred in concluding that (1) his threats were qualifying predicate contacts, and (2) the posted photographs of petitioner's home were also qualifying predicate contacts. In her response brief, petitioner presents no argument in defense of the trial court's treatment of the photographs. Indeed, she refers to the telephonic threats as "the focus of the SPO." That decision is a wise one. Respondent denied that he took the photographs or had somebody take them for him. The court, of course, was entitled to disbelieve him, but petitioner had the burden of establishing that the photographs were qualifying contacts, and she presented no evidence in support of that proposition.

sufficient to establish that these threats were repeated, they were knowingly made, they were credible, they caused petitioner apprehension regarding the safety of herself and her family, the apprehension was reasonable, and it was objectively likely that the threats would be followed by unlawful acts. Our only task, then, is to decide whether these threats were unequivocal and that they threatened imminent personal violence. It is obvious that the threats were unequivocal; one expressly threatened harm, and the other—the threat to "fuck [petitioner] up"—used a colloquial term that, in context, has but one meaning.

The question of whether the threats were of imminent serious physical harm, however, is somewhat closer. If respondent's only threats had been that he would have others harm petitioner if she reported his unlawful contacts, we could not conclude that the threats were of imminent harm. That is so because the threats were contingent; the harm would occur only if petitioner acted in a specified, voluntary manner, and there is no evidence that, at the time, she intended to do so. Like the contacts that we decided did not qualify as a prerequisite for an SPO in *Swarringim v. Olson*, 234 Or App 309, 314-15, 227 P3d 818 (2010)—including a threat to have a third party slit the petitioner's son's throat—respondent's statements about "skinheads" were threats about "what he would have someone else do at some point in the future."

However, the "skinhead" threat provided context for respondent's more immediate threat to "fuck up" petitioner. That threat resembles the respondent's threat in *DiCarlo v. McCarthy*, 208 Or App 184, 186, 145 P3d 178 (2006): "I'm going to fuck you up, I'm going to fuck your old man up, and I'm going to fuck your truck." We held that the statement was a qualifying stalking prerequisite contact. Although we emphasized that the statement was accompanied by threatening physical action, we also noted that it was sufficiently threatening on its own:

> "As respondent yelled threats at petitioner, he slammed his hand down on the windshield of her truck and damaged it while she was sitting inside. That is an act of more than constitutionally protected speech. *In any event, respondent's verbal communications were overtly threatening, and*

*they reasonably put petitioner in fear of immediate and serious personal violence from respondent."*

*Id.* at 188 (emphasis added).

Nor is a threat imminent only if the threatened harm is "immediate." That is not what "imminent" means. Its plain and ordinary meaning is, "ready to take place" or "near at hand." *Webster's Third New Int'l Dictionary* 1130 (unabridged ed 2002). Other contextual factors are also relevant in determining whether respondent's threat to "fuck up" petitioner was a threat of imminent serious harm. Most significant and obvious is his incident of domestic violence against petitioner during their marriage. According to unrebutted evidence, his assault conviction for that incident resulted from his repeatedly hitting her and attempting to choke her. In addition, he bragged to petitioner that, while in Army Special Operations, he killed people, perhaps with his bare hands, and he warned petitioner that he could do that to her if he wanted. Further, respondent repeatedly demonstrated his willingness to break the law—he was charged with multiple violations of a no-contact order. Finally, the record shows that he had actual acquaintances who were "skinheads," and that he knew them from his work release program. In sum, we conclude that the trial court correctly concluded that, under the circumstances present in this case, respondent's threat to "fuck up" petitioner was a credible threat of imminent serious physical harm. That threat, along with his actual commission of a crime against petitioner, constitutes repeated contacts sufficient to justify an SPO.

Affirmed.