NOT DESIGNATED FOR PUBLICATION

No. 114,692

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellee*,

v.

PETTIX MCMILLAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed June 3, 2016. Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Jan Jarman*, assistant city attorney, for appellee.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

*Per Curiam*: Defendant Pettix McMillan appeals the verdict of a jury sitting in Sedgwick County District Court on the grounds the evidence was legally insufficient to convict him of violating a Wichita ordinance criminalizing the making of a telephone call with the intent to abuse, threaten, or harass. The trial evidence showed McMillan called his estranged wife and told her, "I'm going to fuck you and yours up[.]" A jury could reasonably find the proscribed intent in that statement. We, therefore, affirm.

McMillan and his then-wife Maria married in 2001 and had three children. In late 2013, McMillan moved from their Wichita home to California, where he worked as an over-the-road trucker. One of the children later ran away, and the Wichita police joined in

1

the search. That situation and other circumstances apparently angered McMillan. The couple's relationship continued to deteriorate, and we understand they have since divorced.

On January 3, 2014, McMillan called Maria more than 50 times. Late that evening or shortly after midnight, McMillan called the Wichita police department and asked for a welfare check at the home, claiming he had heard gunshots while talking with Maria on the telephone. Officer Dustin Fussell was sent to the home. Maria was both fine and quite surprised to see the police at her door.

Maria told Officer Fussell that McMillan had been repeatedly calling her telephone number and leaving "nasty" messages. Maria played a recorded message McMillan left on December 22, 2013: "My son better be okay or I'm going to fuck you and yours up[;] you can take that to the DA." Officer Fussell specifically noted the message in his report. Maria said the message frightened her.

While Officer Fussell was at the home, McMillan called again. Officer Fussell answered, identified himself, and said he would call McMillan right back. Officer Fussell called McMillan a few minutes later from his patrol car. During their conversation, McMillan acknowledged calling Maria on December 22 and leaving the message. But McMillan told Officer Fussell, the remark was out of context.

McMillan was charged in Wichita Municipal Court with violating a city ordinance prohibiting interference with telephone service. In pertinent part, the ordinance states: "It is unlawful for any person to . . . [make] a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number[.]" Wichita City Ordinance 5.82.010. McMillan was convicted in municipal court. He appealed to the district court and requested a jury trial. In a 2-day trial, the jury convicted McMillan of violating the ordinance. The district court sentenced McMillan to time served and imposed no fine. McMillan has timely appealed to this court.

2

The only issue on appeal is the sufficiency of the evidence presented to the jury to support the guilty verdict. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing below, here the City, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The point for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

The charge was presented to the jury based on the December 22 message McMillan left on Maria's telephone. The message itself had not been preserved and was not played for the jury. But Officer Fussell and Maria both testified to the content of the message. Officer Fussell also recounted McMillan's statement to him admitting having left the message though suggesting the meaning ought to have been considered in context. McMillan did not testify in his own defense, so the jury was not favored with his explanation of the proper context for the message.

The ordinance requires a defendant have an intent to "abuse, threaten[,] or harass." Seldom is criminal intent proved with direct evidence, such as a statement from the defendant as to his or her purpose. A jury commonly must discern intent from the circumstances surrounding the criminal act. *State v. Dixon*, 289 Kan. 46, 65, 209 P.3d 675 (2009); *State v. Foster*, No. 113,059, 2016 WL 368090, at *3 (Kan. App. 2016) (unpublished opinion). Here, the circumstances include the words McMillan used to convey his December 22 message to Maria. The words are telling.

In the message, McMillan's announced conduct was "to fuck you and yours up." We turn to that phrase momentarily. McMillan qualified that conduct by indicating he would *not* so act if his son were "okay." That is, McMillan declared he would take action if some misfortune or mishap had befallen his child. The context, then, indicates the

3

conduct would be retaliatory and, in turn, conveys the notion of something at the very least unpleasant and more likely malevolent.

What, then, does the phrase "to fuck [a person] up" commonly mean or convey? The verb "fuck" is both vulgar and protean in meaning. As an unadorned intransitive verb, the word is an especially crude synonym for having sexual relations. Combined with "up," the intransitive verb is a vulgar expression for having made a mistake—"I really fucked up; I forgot to pay the fine, so there's a warrant out for me." But as a transitive verb, especially with a person as the direct object, the phrase has a quite different and well-recognized hostile meaning, as in: "I am going to fuck you up." See *S.L.L. v. MacDonald*, 267 Or. App. 628, 632, 340 P.3d 773 (2014) (statement "'to fuck [petitioner] up'" had "but one meaning" and conveyed a threat of harm); *State v. Trowell*, 2015 Vt. 96, 131 A.3d 178, 186 (2015); *Cousins v. Com.*, 56 Va. App. 257, 279, 693 S.E.2d 283 (2010); *cf. United States v. Temple*, 447 F.3d 130, 140 (2d Cir. 2006) (use of phrase in voicemail message conveyed threat but lacked "actual immediacy" to support criminal assault under 18 U.S.C. § 111). In short, the phrase commonly conveys a threat of harm typically involving physical injury.

We have no need to gild the lily here. A jury could reasonably conclude the message McMillan left on Maria's telephone was made with an intent to abuse, threaten, or harass. McMillan chose a phrase commonly understood to be threatening. And the message would, for that reason, also be considered harassing. A jury, therefore, could readily find that McMillan, by using those words, displayed the requisite criminal intent to engage in the conduct proscribed in the ordinance. The jury's verdict of guilty was supported in the trial evidence.

Affirmed.

4