652 December 11, 2024 No. 885

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

A. Z.,
*Petitioner-Respondent,*

*v.*

ZACHARY LANGE,
*Respondent-Appellant.*

Union County Circuit Court
23SK01743; A181869

Wes Williams, Judge.

Submitted September 13, 2024.

Matthew S. Gipson and Ferder Casebeer LLP filed the brief for appellant.

No appearance for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Respondent appeals from a judgment entering a permanent stalking protective order (SPO) against him pursuant to ORS 30.866, challenging the sufficiency of the evidence supporting the SPO. Because we conclude that the evidence was legally sufficient to support entry of the SPO, we affirm.[1]

Absent *de novo* review, which respondent does not request, "[w]e review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021). Given respondent's challenge to the sufficiency of the evidence, "we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *Id.* "We defer to the trial court's implicit and explicit credibility determinations * * *." *M. C. H. v. Milligan*, 208 Or App 229, 231, 145 P3d 180 (2006). We briefly state the relevant facts in accordance with that standard.

Petitioner and respondent met on an internet dating site in October 2022, and they began a relationship in December of that year, when petitioner visited respondent at his home in California. In February 2023, respondent visited petitioner in Oregon. On one occasion during that visit, respondent physically abused petitioner. She contacted a friend to come get her because she was afraid for her safety, but respondent would not let her leave with her friend at that time.

Shortly afterwards, petitioner left and stayed in another nearby town, while respondent stayed with petitioner's mother at petitioner's family home until he returned to California. Respondent remained "in contact with [petitioner's] mom and [was] planning to come out here without [petitioner] knowing it." About a month after respondent's visit

---

[1] Our conclusion that the record was sufficient to support issuance of the SPO and the applicable standards of review in this case obviate the need to separately discuss respondent's first assignment of error—that the trial court erred in denying his motion for a directed verdict, brought after petitioner had rested her case.

to Oregon, petitioner "told him [they] were done and * * * blocked him." According to petitioner, "[H]e started calling me off multiple different numbers. Multiple. It was to the point I couldn't use my phone. * * * [I]f I blocked [one] number, it'd be a new number within a few minutes." Respondent contacted petitioner through a variety of electronic channels including email, text message, Facebook, Snapchat, TikTok, and Discord, often creating multiple accounts in order to message her. He also sent a package to her Oregon address after she had cut off contact.

Petitioner contacted the police in Oregon and California for help. An officer in California told respondent to stop contacting petitioner, but respondent "proceeded to email [her] even worse threats." Around this time, respondent sent petitioner a message telling her to "eat shit and die." He told her to kill herself. On other occasions, he told her that he would kill himself if she did not answer him. Petitioner filed a temporary SPO against respondent on May 9, 2023, and respondent was served in California on May 19, 2023. Despite the temporary SPO, respondent told petitioner multiple times that "it's not gonna end well for [her] and that he's not gonna stop until he's in jail." On one occasion, respondent messaged, "[H]ow was your nap?" Petitioner explained, "I don't know [how] he knew I woke up from a nap. I was living by myself at that time." On another occasion, respondent called her 150 times in one evening. When petitioner finally answered to tell him to stop calling because she has an SPO against him, respondent replied, "Well, I'm not home, I'm not gonna be home for a while. * * * [Y]ou can go shove that [SPO] up your ass. I'm not gonna stop and I'm never going to stop."

At the hearing for the permanent SPO, the court found petitioner's testimony credible and her fear "real and obvious * * * by her body language." The court found respondent's credibility lacking on some material parts of his testimony, and it made no comment on whether or not he violated the temporary SPO. The court granted the petition for a permanent SPO, finding that petitioner's testimony regarding the physical abuse was credible and that "although much of [the rest of] the contact was * * * merely speech, it did rise to the level of a necessity for a protective stalking order."

ORS 30.866 authorizes the issuance of an SPO against a person who "intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner," causing the petitioner "reasonable apprehension" regarding their personal safety. ORS 30.866(1)(a), (c). "Repeated" means "two or more times." ORS 163.730(7). "Contact" includes, among other things, "coming into the visual or physical presence of the other person" and "sending or making written or electronic communications in any form to the other person." ORS 163.730(3); *see* ORS 30.866(2) (cross-referencing ORS 163.730). To qualify as a "contact" for SPO purposes, the contact must cause the petitioner both subjective and "objectively reasonable" alarm or coercion. ORS 30.866(1)(a), (b).

Because they implicate free-speech rights under Article I, section 8, of the Oregon Constitution, expressive contacts are held to a higher standard. *State v. Rangel*, 328 Or 294, 302-03, 977 P2d 379 (1999). If the contact involves speech, to qualify as an unwanted contact, it must rise to the level of a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id.* at 303.

Respondent first contends that the trial court erred because there was not sufficient detail regarding the physical contact between the parties in February 2023 for the trial court to conclude that petitioner had objectively and reasonably been caused alarm. We disagree. Petitioner testified that the February incident included physical abuse. The trial court made an express credibility finding in favor of petitioner. Viewing the record in the light most favorable to the trial court's disposition, we conclude that the record contains sufficient evidence, in the form of petitioner's testimony, to support the court's findings as to the physical abuse, including that respondent's nonexpressive contact gave rise to petitioner's objectively reasonable alarm.

Respondent next contends that the trial court erred because the speech-based contact was insufficient to meet the *Rangel* standard. Specifically, respondent contends that any threat made was, first, not unequivocal and, second,

did not give rise to petitioner's fear of imminent and serious personal violence that was objectively likely to be followed by unlawful acts. As we discuss below, we conclude that at least one of the expressive contacts rises to the level of a qualifying threat. As a result, the trial court did not err in issuing the SPO based, in part, on that contact.

In determining whether an expressive contact is an "unequivocal" threat of "imminent serious physical harm," we may look to contextual factors. *M. D. O. v. Desantis*, 302 Or App 751, 761-62, 461 P3d 1066 (2020). "[C]ontacts that might appear innocuous when viewed in isolation often take on a different character when viewed either in combination or against the backdrop of one party's assaultive behavior towards the other." *Boyd v. Essin*, 170 Or App 509, 518, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001).

Here, we must consider the contextual factors, which include physical violence and obsessive conduct. Respondent had physically abused petitioner just a few months before she sought the SPO. He then subjected her to a barrage of disturbing and persistent communication through multiple channels, undeterred by blocking or requests to stop. He demonstrated disregard for the temporary SPO by continuing to send petitioner unwanted communications. He told petitioner that he was planning to return to her area without notice. Against that backdrop, respondent's message to petitioner that "it's not gonna end well for [her] and that he's not gonna stop until he's in jail," is an "unequivocal" threat that is reasonably understood as a threat of violence. Respondent's statement, taken in context, was also a threat of "imminent" serious physical harm. *See M. D. O.*, 302 Or App at 762 (concluding that the respondent's statement—"If I don't get you now, I'll get you later"—was a threat of imminent serious harm based on contextual factors including the highly acrimonious relationship between the parties); *S. L. L. v. MacDonald*, 267 Or App 628, 633, 340 P3d 773 (2014) (concluding that the respondent's telephonic threats were "imminent" based on contextual factors such as past domestic violence and violation of a no-contact order).

That respondent resides in California does not, at least on this record, preclude the threat from giving rise to a fear of "imminent" harm that is objectively likely to be followed by unlawful acts. We have explained that an imminent threat need not convey a risk of "immediate" harm. *S. L. L.*, 267 Or App at 633. Rather, an imminent threat is "ready to take place" or "near at hand." *Id.*; *accord State ex rel Juv. Dept. v. Dompeling*, 171 Or App 692, 695, 17 P3d 535 (2000) (explaining that "imminent" means "near at hand, impending, or menacingly near" (internal quotation marks omitted)).

We acknowledge that distance between the parties—particularly those living in separate states—might make it more difficult for a petitioner to demonstrate that a threat gives rise to a fear of imminent harm that is objectively likely to be followed by unlawful acts. We have concluded that a respondent who threatened an Oregon resident by email from California had not threatened imminent harm that was objectively likely to be followed by unlawful acts. *V. G. G. v. Beckham*, 224 Or App 565, 578, 198 P3d 980 (2008). As in this case, the California-based respondent had come up to Oregon in the past. *Id.* However, unlike here, the California-based respondent did not know the petitioner's home address, and we concluded that there was no evidence that the respondent intended to follow up on his threats. *Id.*

Here, the record established that respondent remains in contact with petitioner's mother, had planned to return to the area where petitioner lives without petitioner's knowledge, and had sent petitioner messages suggesting that he was not at home in California and had intimate knowledge of her whereabouts and personal activities. There was evidence that respondent was aware of petitioner's address and had even resided for a time with petitioner's mother. Finally, given the past incident of physical abuse and respondent's claim that "he's not gonna stop until he's in jail," we conclude that there was evidence from which the trial court could conclude, as it did, that respondent's threat was objectively likely to be followed by unlawful acts.

Affirmed.