No. 628          July 9, 2025          823

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

K. V.,
*Petitioner-Respondent,*

*v.*

Holly Lorene SMITH,
*Respondent-Appellant.*

Clackamas County Circuit Court
24SK00897; A184461

Colleen F. Gilmartin, Judge.

Argued and submitted May 28, 2025.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin, PC.

Laura Graser argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO) against her pursuant to ORS 30.866(1). In her only assignment of error, respondent contends that her communicative contacts with petitioner did not satisfy the test for communicative conduct set forth in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). For the reasons discussed below, we affirm.

Absent *de novo* review (which neither party requests), we "review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *A. Z. v. Lange*, 336 Or App 652, 653, 562 P3d 647 (2024) (internal quotation marks omitted). And because appellant's argument largely challenges the sufficiency of the evidence, "we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *Id.* (internal quotations marks omitted). With that standard in mind, we recount the facts.

Petitioner sought an SPO against respondent, the ex-wife of her current boyfriend, Geoff, and testified as to the following five contacts.[1] First, respondent enlisted her friends to send harassing messages to petitioner over Facebook. Second, respondent told neighbors at the home where petitioner was staying to take pictures of petitioner and her vehicles. Third, respondent "ambush[ed]" petitioner and Geoff at an airport in Arizona when they were dropping off respondent and Geoff's shared children, "yanking" the kids from Geoff, and walking away without taking their bags and backpacks. Fourth, during video calls, respondent had the children use the tablet camera to "look around the house" where petitioner resides with Geoff.

The last contact occurred between respondent and petitioner's mother, M. While petitioner was speaking with M, the phone call dropped. M called petitioner back, but respondent answered the phone and identified herself as

---

[1] Because the trial court did not specify which contacts it considered to be qualifying contacts for the SPO, "we have considered all of the contacts cited by" petitioner. *C. Q. R. v. Wafula*, 305 Or App 344, 354 n1, 471 P3d 786 (2020).

"Geoff's wife." Respondent told M to tell petitioner that she was "in danger" and that she was "going to pay" and "suffer" if she did not leave Geoff. Respondent told M that she was "intercepting" petitioner's phone calls and "knew exactly where [petitioner] was and what [petitioner] was doing."

In order to obtain an SPO, a petitioner must prove that respondent engaged in at least two "repeated and unwanted contact[s]" that subjectively alarmed her as to the threat of physical injury, and that that alarm was objectively reasonable. ORS 30.866(1)(a) - (c). A "contact" includes "almost any interaction with the petitioner and can be divided between nonexpressive contacts and expressive, also known as communicative contacts." *M. D. O v. Desantis*, 302 Or App 751, 758, 461 P3d 1066 (2020) (internal quotation marks omitted). "Expressive contacts," are held to a higher standard because they implicate free-speech rights under the state and federal constitutions. *Rangel*, 328 Or at 303. Thus, in order for a communicative contact to qualify as an unwanted contact, it must rise to the level of a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id*.

At the trial court, petitioner testified as to the five contacts discussed above. Petitioner testified that each of those contacts made her fearful, in part, because respondent had previously told her that she has guns and "knows how to use them." The trial court concluded that respondent's contacts were subjectively alarming, and that that alarm was objectively reasonable. Thus, the trial court issued the stalking protective order.

That determination is supported by at least two qualifying contacts in the record. The first qualifying contact for purposes of ORS 30.866(1)(a) was respondent's interception of a phone call between petitioner and her mother. Petitioner testified that that contact alarmed her and that alarm was reasonable because respondent, unbeknownst to and unauthorized by petitioner, was able to access petitioner's cell phone. The second contact involved respondent instructing her neighbors to photograph petitioner at the home where she was staying. Petitioner testified that that

contact was subjectively alarming, and, in context, that alarm is objectively reasonable because respondent had previously threatened petitioner that she would suffer consequences if she stayed in that home. *Cf. J. L. B. v. K. P. B.*, 250 Or App 122, 129-30, 279 P3d 290 (2012) (explaining that the respondent photographing the petitioner's house was not objectively alarming, in part, because respondent "did not make threatening gestures or comments"); *see A. A. C. v. Miller-Pomlee*, 296 Or App 816, 828, 440 P3d 106 (2019) (considering "respondent's history of conduct toward petitioner" in concluding that petitioner's alarm, caused by respondent's "tracking" of petitioner, was objectively reasonable).[2]

On appeal, respondent does not advance an argument as to how the trial court erred in assessing the evidence in accordance with the statutory test. Rather, she contends that "there was no evidence of any threat that satisfied" the heightened standard for expressive contacts under *Rangel*. Petitioner responds that any argument challenging the sufficiency of evidence under the *Rangel* test is unpreserved. We agree with petitioner.

In order to preserve an argument, a party must articulate enough information to an opposing party or the trial court "to be able to understand [a party's contention] and to fairly respond to it." *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011). Respondent (or petitioner) never mentioned the *Rangel* test during trial. Indeed, the only reference to *Rangel* is located in petitioner's trial memorandum's description of general legal principles governing the issuance of SPOs. That is insufficient to preserve respondent's current argument on appeal. *See State v. Ortega-Gonsalez*, 287 Or App 526, 539, 404 P3d 1081 (2017) (explaining that the defendant's argument was unpreserved because he "did not specifically object to the trial court's failure to make factual findings when it imposed" his sentence," despite the defendant's *own* sentencing memorandum "alert[ing] the trial court, and the state" that his guilty verdicts could not be sentenced consecutively (emphasis added)).

---

[2] Our conclusion that those two incidents satisfy ORS 30.866 obviates the need to address respondent's other contacts.

Because the argument is unpreserved, we move on to respondent's request for plain error review. "For an error to be plain, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Callen*, 340 Or App 450, 455, ___ P3d ___ (2025). A review for plain error is undertaken with "utmost caution." *State v. Vanornum*, 354 Or 614, 630-31, 317 P3d 889 (2013). It is not obvious that all of petitioner's contacts were expressive contacts subject to the *Rangel* test as respondent contends (as opposed to the statutory test under ORS 30.866 that the trial court did apply). Rather, as explained above, at least two contacts identified at trial were not obviously communication-based subject to the *Rangel* test: (1) the neighbors photographing petitioner at the home and (2) respondent intercepting petitioner's phone call with her mother. Therefore, the trial court did not plainly err.

Affirmed.